# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JON H.[1]**, | Case No. 2:20-cv-2054-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Bruce Whitman Brewer, LAW OFFICES OF BRUCE W. BREWER, PC, PO Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

Scott Erik Asphaug, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; and Kelly Arefi, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Jon H. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying his application for Disability Insurance

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on March 1, 2018, alleging disability beginning on August 4, 2017. AR 87. Plaintiff's date of birth is September 10, 1958, and he was 58 years old as of the

alleged disability onset date. AR 88. The agency denied his claim both initially and upon

reconsideration, and Plaintiff requested a hearing. AR 122, 129, 132. Plaintiff appeared for a

hearing before an ALJ in March 2020. AR 39. The ALJ issued a decision denying Plaintiff's

claim for benefits. AR 20-33. Plaintiff requested review of the ALJ's decision, which the

Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the

agency and Plaintiff seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

As a preliminary step for Plaintiff's claim, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2022. AR 22. The ALJ then proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 4, 2017. *Id.* At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of obesity, spine disorder, osteoarthritis of the right knee, and arrhythmias. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform: "light work as defined in 20 CFR 404.1567(b) except the claimant is limited to stand and/or walking four hours total in an eight-hour day. He can occasionally push/pull, such as foot controls, with the right lower extremity. He can frequently climb ramps and stairs; never climb ladders, ropes, scaffolds; and occasionally kneel, crouch, crawl, and stoop/bend. He should have no exposure to vibrations, or to hazards such as dangerous machinery or unprotected heights." AR 25. Based on these limitations, at step four, the ALJ found that Plaintiff could perform his past relevant work as an estimator. AR 32. The ALJ thus concluded that Plaintiff was not disabled. AR 33.

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (a) discounting Plaintiff's symptom testimony;
(B) discounting a portion of the opinion of Dr. William Trueblood; (c) discounting lay witness
testimony; and (d) finding that Plaintiff could perform his past relevant work. The Court
addresses each alleged error in turn.

**A.  Plaintiff's Symptom Testimony**

A claimant "may make statements about the intensity, persistence, and limiting effects of
his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step
process for evaluating a claimant's testimony about the severity and limiting effect of the
claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must
determine whether the claimant has presented objective medical evidence of an underlying
impairment 'which could reasonably be expected to produce the pain or other symptoms
alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.
Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not
show that her impairment could reasonably be expected to cause the severity of the symptom she
has alleged; she need only show that it could reasonably have caused some degree of the
symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the
ALJ can reject the claimant's testimony about the severity of her symptoms only by offering
specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting
*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must
state which pain testimony is not credible and what evidence suggests the complaints are not
credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be
"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 1. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ found Plaintiff pursued a conservative course of treatment because he did not go to the emergency room or seek surgery for his back and neck pain. AR 28. The Commissioner argues that because Plaintiff's medical providers did not prescribe more aggressive treatment, Plaintiff's symptoms were either mild or controlled with treatment. The ALJ, however, did not discount Plaintiff's testimony because his symptoms were subdued with treatment. Instead, the ALJ discounted Plaintiff's testimony because he did not seek out more aggressive treatment, such as surgery, even when none of his medical providers recommended such treatment.

Plaintiff frequently visited his medical providers after the alleged onset date, underwent anticoagulation therapy, and consistently took several prescribed medications including Warfarin, Hydrocodone (an opioid pain medication), Diltiazem, Atorvastatin, and Metoprolol. *See* AR 696. Regarding Plaintiff's treatment with narcotic pain medication, he took opioid medication three to four times per day for at least six years. *See* AR 696, 719. This treatment is

not conservative. *See Rawa v. Colvin*, 672 F. App'x 664, 667 (9th Cir. 2016) (finding the plaintiff's treatment was not conservative because she "underwent extensive testing after her alleged disability onset date," received steroid injections, took a series of prescribed medications, and did not decline recommended treatment); *Yolanda G. v. Kijakazi*, 2022 WL 336841, at *5 (D. Or. Feb. 4, 2022) ("Courts in this district regularly find, however, that a claimant consistently taking narcotic pain medication is not receiving conservative treatment."); *Tracey P. v. Kijakazi*, 2021 WL 4993021, at *15 (S.D. Cal. Oct. 27, 2021), *report and recommendation adopted sub nom. Tracey Anne P. v. Kijakazi*, 2022 WL 172842 (S.D. Cal. Jan. 18, 2022) ("The Court is not persuaded that Norco can be considered 'conservative' treatment even when taken at its lowest dose."); *Caroline M.H. v. Comm'r of Soc. Sec.*, 2021 WL 5937167, at *7 (W.D. Wash. Dec. 16, 2021) ("Here, the use of Suboxone, a prescription narcotic painkiller, and hydrocortisone, a prescription steroid, cannot be characterized as conservative."). Thus, Plaintiff's purported conservative treatment is not a clear and convincing reason to discount his subjective testimony regarding his limitations.

### 2. Activities of Daily Living

The Commissioner contends that the ALJ properly discounted Plaintiff's testimony based on Plaintiff's activities of daily living. The ALJ, however, only referred to Plaintiff's activities of daily living when discussing Dr. Trueblood's opinion. *See* AR 30. The ALJ did not cite Plaintiff's activities of daily living as a reason to discount Plaintiff's testimony, and the Court must disregard *post hoc* explanations. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

### 3.  Objective Medical Evidence

The ALJ discounted Plaintiff's symptom testimony based on a lack of supporting medical evidence. That reason alone, however, is insufficient to discount symptom testimony. *See* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"); *see also Robbins*, 466 F.3d at 883 (stating that an ALJ "may not disregard it solely because it is not substantiated affirmatively by objective medical evidence"). Because none of the ALJ's reasons for discounting Plaintiff's testimony are clear and convincing, the Court must determine whether the ALJ committed harmful error.

## B.  Dr. Trueblood's Opinion

Plaintiff filed his application for benefits on March 1, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.1520c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c). Supportability is determined by whether the medical source presents

explanations and objective medical evidence to support his or her opinion. 20 C.F.R.

§ 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence

from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however,

required to explain how he or she considered these secondary medical factors, unless he or she

finds that two or more medical opinions about the same issue are equally well-supported and

consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 404.1520c(b). The Court must, moreover, continue to consider whether the

ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*,

32 F. 4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for

rejecting a treating or examining doctor's opinion, which stems from the special weight given to

such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence.").

The ALJ found Dr. Trueblood's opinion that Plaintiff suffers from mild to moderate

memory impairment not persuasive because it was not supported by the record. AR 30. The ALJ

concluded that the record supported only a finding that Plaintiff suffered from mild memory loss,

not moderate memory loss. *Id.* The ALJ explained that a moderate memory impairment was not

supported by the record because Dr. Trueblood appeared to have based his opinion on the subjective reports of Plaintiff and his wife and because other medical providers' treatment notes conflicted with a finding of moderate memory impairment. *Id.* Drs. Susan M. South and Sergiy Barsukov both opined that Plaintiff suffered no impairment in his ability to understand, remember, or apply information and suffered a mild impairment in his ability to concentrate, persist, or maintain pace. AR 93, 111. Substantial evidence supports the ALJ's conclusion. The ALJ therefore did not err in discounting Dr. Trueblood's opinion that Plaintiff suffered from more than a mild memory impairment.

### C. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores uncontradicted lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ found that the objective clinical evidence, Plaintiff's treatment records, the consultative examination reports, and the opinions of the agency consultants were more persuasive than that reports completed by Plaintiff's wife and former employer, which indicated that Plaintiff had greater limitations. AR 32. Conflicts with the medical evidence and with the opinions of physicians are germane reasons to discount lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason."); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); *Vasquez v. Kijakazi*, 2022 WL 827002, at *10 (E.D. Cal. Mar. 18, 2022) ("A conflict with treatment notes or inconsistency

with the medical record as a whole are germane reasons to reject an 'other source' opinion."
(citing *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014)).

## D.  Plaintiff's Past Relevant Work

Plaintiff argues the ALJ erred by concluding at step four that Plaintiff could perform his past relevant work as an estimator. Plaintiff argues that his past relevant work as an estimator was a composite job and that his RFC does not permit him to perform all parts of that composite job. After reviewing Plaintiff's description of his past work as an estimator, however, the Vocational Expert (VE) concluded that Plaintiff's past relevant work was not a composite job. AR 78. The VE then testified that based on Plaintiff's RFC, Plaintiff could perform his past relevant work as an estimator. *Id.* Thus, substantial evidence supports the ALJ's step four finding. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").

## E.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ erred by failing to provide clear and convincing reasons to discount Plaintiff's testimony. The record, however, contains conflicts and ambiguities, including conflicts between Plaintiff's testimony and the medical opinions. Accordingly, remand for further proceedings is warranted.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this Opinions and Order.

**IT IS SO ORDERED**.

DATED this 8th day of June, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge